**In re MILK PALACE DAIRY, LLC, a Corporation, Debtor.**

**Milk Palace Dairy LLC, Plaintiff–Appellant,**

v.

**L & N Pump, Inc., Defendant–Appellee.**

**BAP No. KS–07–060.**

**Bankruptcy No. 03–16743.**

**Adversary No. 05–05821.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

April 8, 2008.

---

Submitted on the briefs: *

W. Thomas Gilman and Kathleen L. Harrell–Latham of Redmond & Nazar, LLP, Wichita, KS, for Plaintiff–Appellant.

Timothy J. King of Speth & King, Wichita, KS, for Defendant–Appellee.

Before CLARK, BOHANON, and MICHAEL, Bankruptcy Judges.

## OPINION

CLARK, Bankruptcy Judge.

Debtor appeals the bankruptcy court's decision rejecting its preference claim based on applicability of the ordinary course of business defense. We AFFIRM.

### I. Background

This appeal presents a straightforward claim of preference. Debtor, Milk Palace Dairy, LLC ("Milk Palace" or "Debtor") seeks recovery of a $10,000 payment that it made, approximately 45 days prior to the filing of its Chapter 11 petition, on December 15, 2003 to one of its vendors.[1] The parties stipulated prior to trial that the disputed payment satisfied all of the criteria for a preference under 11 U.S.C. § 547(b). However, defendant L & N Pump, Inc. ("L & N") asserts that the payment is covered by an exception to the preference provision because it was made in the "ordinary course of business," as set forth in 11 U.S.C. § 547(c)(2).

Milk Palace operates a dairy and, therefore, primarily conducts business within the dairy industry. On the other hand, L & N is an irrigation pump repair service primarily engaged in the rebuilding of

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. Because the Debtor's petition pre-dated enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") of 2005, this case is governed by the Bankruptcy Code as it existed prior to that time. Therefore, all references to the Bankruptcy Code in this decision are to the pre-BAPCPA versions.

pump engines and sale of pump parts within the agricultural industry. The parties first did business in August 2000, and Debtor was billed approximately $10,000 by L & N at that time. Debtor timely paid that bill in full. The parties engaged in only one transaction in the next year, in the amount of $158.25, which was also timely and fully paid by Debtor. However, beginning in October 2001, the parties engaged in fairly regular transactions. L & N's general billing practice is to create invoices for work performed and parts sold, and all invoices for a given month are mailed to the customer at the beginning of the following month. Although L & N invoices did not specify a payment due date, L & N routinely charged interest on invoices that were not paid in full by the end of the month in which they were billed. In fact, on three occasions prior to the preference period, Debtor was charged and paid interest on L & N invoices. Both L & N and Debtor agree that assessment of finance charges did not change the manner of L & N's interactions, and that there were no consequences for late payments beyond the interest charges.

Milk Palace issued the disputed $10,000 payment on October 29, 2003, in response to three invoices, in the amounts of $7,470.51, $3,477.53, and $3,026.67, that had been sent by L & N on September 2, 2003.[2] There were no collection efforts made with respect to those invoices, and the payment received by L & N was simply applied to the Debtor's account. Following a trial, the bankruptcy court ruled that L & N had met its burden of proof with respect to the ordinary course of business exception, and that the payment was therefore not preferential.

## II. Appellate Jurisdiction

This Court has jurisdiction to hear timely-filed appeals from final judgments and orders of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[3] Because the notice of appeal was timely filed within ten days of a final order, and because neither party to this appeal has elected to have the appeal heard by the district court, this Court has appellate jurisdiction.

## III. Standard of Review

■ Debtor states the standard of appellate review in this case as *de novo*, stating that it is "an evaluation of the legal issues and the validity of the 'ordinary course' defense."[4] However, the Tenth Circuit has stated that a bankruptcy court's determination that payments were not made in the ordinary course of busi-

---

**2.** The parties do not clearly indicate whether all three of these invoices were sent to Milk Palace at the same time, though there does not appear to be any dispute as to this issue. L & N's records list the date of the last of the invoices as September 2, 2003, but also indicate that all three invoices were sent on that same date. *See Exhibit A, Accounts Receivable Inquiry, in* Appellant's Appendix ("App.") at 86. According to L & N's usual practice, a September 2 invoice would not be mailed to the customer until the beginning of October. *See March 27, 2007, Transcript of Oral Proceedings, Testimony of Rick Williamson,* at 10, *ll.* 12–14, *in* App. at 31. However, as the bankruptcy court noted, the third invoice ac-

tually bears a date of August 30 (*See Exhibit B, Service Invoices,* at 5–6, *in* App. at 90–91), and, on October 1, L & N added 2% interest on the entire $13,974.71 to the Milk Palace account (*See Exhibit D, Summary of Exhibit A, in* App. at 93). Therefore, this Court assumes, as did the bankruptcy court, that all three invoices were in fact mailed to Milk Palace on September 2.

**3.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

**4.** *Br. of Appellant* at 6.

ness is "primarily factual," and therefore reviewed for clear error.[5]

## IV. Discussion

 L & N admits that the disputed payment meets the *prima facie* standard for preference, but asserts the defense that the payment was made in the ordinary course of business. The ordinary course defense is set forth in § 547(c)(2), as follows:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.][6]

This defense has been interpreted to require the creditor asserting it to establish that the disputed payment was "ordinary" under both a subjective (as between the parties) and an objective (commercial practice) analysis.[7] The subjective analysis typically involves comparing prefer-ence period transactions with the parties' previous transactions with respect to four primary factors: 1) the length of time involved in the preference period transaction; 2) whether the amount or the form of that payment differed from previous practice; 3) whether that transaction involved any unusual collection or payment activity; and 4) the circumstances under which the transfer was made.[8]

 Applying this standard, this Court agrees with the bankruptcy court's conclusion that L & N established the subjective ordinariness of the disputed payment. In all ways, the transaction was "ordinary" between these parties, with the possible exception that the payment amount was significantly less than the total due.[9] There was no collection activity with respect to the disputed payment, no pressure put on Debtor to pay, nor any other apparent change in the parties' dealings with respect to that payment. Although the disputed payment could be described as "delayed," it was made more quickly than at least one previous payment had been, and included less interest than previously had been paid by Debtor to L & N.[10] The single fact that Debtor, once again, chose to take advantage of L & N's payment terms is simply insufficient to overcome the other evidence that the dis-

---

**5.** *Clark v. Balcor Real Estate Finance, Inc. (In re Meridith Hoffman Partners),* 12 F.3d 1549, 1553 (10th Cir.1993).

**6.** The BAPCPA amendments to this section in 2005 combined the three subsections (A), (B), and (C) into two and made them disjunctive through the use of "or" rather than "and."

**7.** *Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.),* 220 B.R. 1005, 1020 (10th Cir. BAP 1998).

**8.** *Id.* at 1020–21.

**9.** Debtor's only prior partial payment, in July 2003, involved underpayment of two June invoices totaling $156.32 by $27.25, and result-ed in the addition of a $0.55 interest charge on Debtor's August billing. The underpayment appears to have resulted from a simple accounting error, however, since Debtor's June invoice had been in the amount of $129.07, which amount Debtor paid in both June and July. *See Exhibit D, Summary of Exhibit A, in* App. at 93.

**10.** Late payments are not typically considered ordinary, unless they fall within a pattern of payments that is ordinary between the parties. In this case, since no due date was specified, Debtor's payment was not technically "late."

puted payment was ordinary between the parties.

■ We therefore consider whether L & N sufficiently established the objective standard of ordinariness. The Tenth Circuit has held that this standard requires that the business terms between the parties be "the kinds of terms that creditors and debtors use in ordinary circumstances, when debtors are healthy."[11] In the *Meridith Hoffman* case, the court agreed with the lower courts that the objective standard had not been satisfied, stating that the payment arrangement in that case was only used by creditors "in the industry" when their debtors were in trouble.[12] Subsequently, relying on *Meridith Hoffman*, the Tenth Circuit BAP defined the objective test as "whether the transfers were ordinary in the industry."[13] Just what constitutes the relevant industry has not been clearly established. However, in *Sunset Sales*, the court found that the objective test had not been satisfied because there was no evidence "that it was bonding industry practice to accept, or mining industry practice to pay, collateral payments several months after they are due."[14]

■ In the present case, Debtor asserts that the relevant industry is the dairy industry, which it contends is different from the farming or agricultural industry with respect to what constitutes ordinary business terms. Thus, according to Debtor, the dairy industry has a year-round income stream and operates on a pay-as-billed basis, while the farming industry depends on credit except during harvest. At trial, the evidence regarding industry standards consisted of the limited testimony of Debtor's witness, Clayton McCarty, who had been in the dairy business for 11 years but had no personal knowledge regarding the Debtor's business, and the testimony of L & N's witness, Rick Williamson, L & N's part-owner and manager. Mr. Williamson described L & N's billing practices, both in general and specifically with respect to Debtor. Mr. McCarty testified that dairies "try to" pay bills from their vendors by the due date, while also admitting that they probably don't "always make the payment on the set due date."[15] When asked whether a dairy that was in good shape financially would allow a late fee or an interest charge to be assessed on an invoice, McCarty stated, "No, you wouldn't do that."[16]

Although Debtor contends that this testimony established that credit is not ordinary in the dairy industry, Mr. McCarty's generalized statements can just as easily support a finding that, while credit is offered to dairies, they try not to use it. Thus, although the allowance of delayed payments with the addition of interest was an option that L & N routinely offered to all of its customers, Milk Palace only occasionally used it. The evidence cannot reasonably be interpreted to support a finding

11. *Clark v. Balcor Real Estate Finance, Inc. (In re Meridith Hoffman Partners)*, 12 F.3d 1549, 1553 (10th Cir.1993).

12. *Id.* at 1554.

13. *In re Sunset Sales, Inc.*, 220 B.R. at 1020.

14. *Id.* at 1021.

15. *See March 27, 2007, Transcript of Oral Proceedings, Testimony of Clayton McCarty in Adversary Case 05–5878*, at 2–3, *ll.* 24, 1–2, in App. at 43–44. Counsel for Appellant, W. Thomas Gilman, advises that the parties hereto agreed to allow this testimony to be proffered in the adversary from which the instant appeal has been taken. *Affidavit of W. Thomas Gilman* at 1–2, ¶ 3, *in* App. at 40–41.

16. *See March 27, 2007, Transcript of Oral Proceedings, Testimony of Clayton McCarty*, at 17, *l.* 10, *in* App. at 38.

that a creditor's routine granting of credit, usable at the customer's option, is not "ordinary," even within the restricted industry that Debtor relies upon. Though minimal, the evidence at trial was sufficient to support the bankruptcy court's determination that the routine offering, and occasional use, of credit is an ordinary business practice within the dairy, agricultural, or pump sales industries.

In any event, such payment terms are not the type of business practice that the preference statute targets. Its goal of preventing creditors from exerting undue pressure on struggling debtors would not in any way be furthered by a determination that routine offering of more than one payment option to debtors renders payments made in reliance on those terms preferential. As noted by the Tenth Circuit, the preference provision is intended to discourage "unusual action" that might "favor certain creditors or hasten bankruptcy by alarming other creditors and motivating them to force the debtor into bankruptcy to avoid being left out." [17] There was no such unusual action in the present case.

### V. Conclusion

The bankruptcy court's findings that the disputed payment was both subjectively and objectively ordinary are not clearly erroneous, and its conclusion that the ordinary course of business defense was established is therefore affirmed.

---

17. *Clark v. Balcor Real Estate Finance, Inc. (In re Meridith Hoffman Partners)*, 12 F.3d 1549, 1553 (10th Cir.1993) (internal quotation marks omitted).